UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| 2-WAY COMPUTING, INC.,<br><br>        Plaintiff,<br><br>vs.<br><br>GRANDSTREAM NETWORKS, INC.,<br><br>        Defendant. | 2:16-cv-01110-RCJ-PAL<br><br>ORDER |

This case arises out of the alleged infringement of a patent for an "audio communication system for a computer network."  Pending before the Court is a Motion to Dismiss (ECF No. 21).

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff 2-Way Computing, Inc. has sued Defendant Grandstream Networks, Inc. in this Court for patent infringement under 35 U.S.C. § 271(a).  Plaintiff alleges that Defendant's manufacture, use, importation, offer, and/or sale of the GXP2120 SIP Enterprise Phone infringes Claim 1 of U.S. Patent No. 5,434,797 (as reexamined).  Defendant has moved to dismiss.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

     A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  That is, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable cause of action (*Conley* review), but also must allege the facts of his case so that the court can determine whether the plaintiff has any basis for relief under the cause of action he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review).  Put differently, *Conley* only required a plaintiff to identify a major premise (a cause of action), but *Twombly* and *Iqbal* require a plaintiff also to allege minor premises (facts of the plaintiff's case) such that the syllogism showing liability is logically complete and that liability necessarily, not only possibly, follows (assuming the allegations are true).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**III.   ANALYSIS**

Defendant argues that the '797 Patent is patent-ineligible under 35 U.S.C. § 10 and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). A district court may determine whether a patent is eligible under § 101 at the dismissal stage. *See generally Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) (affirming such a dismissal).

An inventor may obtain a patent on "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, the Supreme Court "ha[s] long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp.*, 134 S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The driving concern behind this exclusionary principle is one of pre-

emption—"'that patent law not inhibit further discovery by improperly tying up the future use of' these building blocks of human ingenuity." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1301 (2012)). Notably, though, "an invention is not rendered ineligible for patent simply because it involves an abstract concept," *id.* (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)); "[a]pplications of such concepts to a new and useful end . . . remain eligible for patent protection," *id.* (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)) (internal quotation marks and alterations omitted). In other words, "in applying the § 101 exception, [courts] must distinguish between patents that claim the buildin[g] block[s] of human ingenuity and those that integrate the building blocks into something more, thereby transform[ing] them into a patent-eligible invention." *Id.* (quoting *Mayo Collaborative Servs.*, 132 S. Ct. at 1294, 1303) (internal quotation marks omitted; second through fourth alterations in original).

The Supreme Court has adopted a two-step test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id.* at 2355. First, a court determines whether the claim is "directed to one of those patent-ineligible concepts." *Id.* If not, the analysis ends. If so, however, a court must consider the elements of each claim "both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1298). Step two is "a search for an '"inventive concept"'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1294). Such a transformation requires "more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1294) (alterations in original).

Claim 1 of the '797 Patent as issued on July 18, 1995 read:

A computer station of a computer network, said computer station comprising:

a computer station network interface;

a microphone;

a speaker; and

an audio communication system, said audio communication system comprising:

> an audio responsive input unit which accepts analog audio waveform signals from the microphone and digitizes the audio waveform signals;
>
> an audio output unit which converts digital audio waveform signals to analog audio waveform signals for audible output by the speaker; and
>
> a computer station controller configured to execute application programs of said computer station, said computer station controller coupled to said audio responsive input unit, to said audio output unit, and to said computer station network interface, said computer station controller configured to accept the digitized audio signals from said audio responsive input unit and to provide the signals in audio data packets for transmission via said computer station network interface over the computer network, said computer station controller further configured to accept audio data packets from said network via said computer station network interface and to transfer said audio data packets to said audio output unit, said computer station controller also managing the operations of the audio communication system while other application programs are actively executing in the computer station controller.

U.S. Patent No. 5,434,797 col. 18, ll. 31–62.  In September 2, 2008, a fourth sub-element was added to the fourth element pursuant to an ex parte reexamination proceeding:

> a user interface that displays on a screen information relating to the other application programs that are actively executing and information to control the audio communication system.

Ex Parte Reexam. Cert. U.S. Patent No. 5,434,797 C1 col. 1, ll. 56–59.  During the relevant time, therefore, the '797 Patent contained four elements, the fourth of which contained four sub-elements. *See id.*

Defendant argues that the "abstract idea" of translating information to enable audio communication "has been practiced for decades." The Court first notes that the question under § 101 and *Alice Corp.* is not whether the invention or some variation thereof has been long-practiced—the doctrines of anticipation and obviousness under pre-AIA §§ 102 and 103, respectively, govern such challenges, and Defendant does not invoke those sections via the present motion[1]—but whether the patentee has simply instructed a practitioner to implement an abstract idea such as "risk-hedging" or "intermediated settlement" using a generic computer. *See Alice Corp.*, 134 S. Ct. at 2357–59. *Alice Corp.* stands for the proposition that a method directed to an unpatentable abstract concept does not become patentable simply because the practitioner is directed to use a generic computer to perform it or because the invention is claimed as a generic computer apparatus used to perform the otherwise unpatentable method. But it is unpatentable methods that are impugned under *Alice Corp.* Methods utilizing a generic computer apparatus are not per se infirm under *Alice Corp.*; it is just that the bare addition of a generic computer will not make an otherwise unpatentable method patentable. The question of unpatentability of abstract ideas under *Alice Corp.* is not whether an invention can be understood or described in the abstract, i.e., in one's mind (any patent claim that could not be would fail for lack of enablement), but whether the invention can be *practiced* in the abstract (mathematical calculations, risk-hedging, etc).

The Court is not convinced that Claim 1 is directed to an abstract concept. Rather, it is directed to a concrete, physical task. Unlike the risk mitigation method at issue in *Alice Corp.*, converting sound to electronically stored information (and vice versa after transmitting data

---

1 It appears that the invention may be anticipated under pre-AIA § 102(a) or obvious under § 103. *See* https://en.wikipedia.org/wiki/Voice_over_IP#Historical_milestones, last visited October 14, 2016 (appearing to indicate that variations of the technology at issue were practiced as much as 20 years prior to the 1994 application leading to the '797 Patent).

between two computers) is not something that can be done without the claimed apparatus (or a similar apparatus). The "computer station" claimed here is not utilized simply for its generalized computing capabilities, i.e., its ability to substitute for a human mind, pencils and paper, etc. to perform an abstract task. On the contrary, Claim 1 uses the computer station for a particular, concrete method of communication inherently tied to a machine with particular physical capabilities. Neither does the invention merely involve the conversion of information from one abstract form to another. The information is converted from and to physical sound waves by a machine. Indeed, as far as Claim 1 is concerned, the electronic data needn't ever be converted from one abstract format to another; the only conversion required is from physical sound waves to electronic data packets and vice versa. Sound waves are not abstract concepts but fluctuations in air pressure in the physical world. Nor are electronic data packets abstract concepts. Nor does the '797 Patent attempt to claim all instances of communication by sound, and even if it did such a claim would likely satisfy § 101 because communication by sound is not an abstract concept that can be performed in one's mind (although such a broad claim would of course be anticipated under pre-AIA § 102(a)). The motion to dismiss therefore fails at the first step of *Alice Corp.* Because the invention is not directed to a patent-ineligible concept, there is no need to analyze whether the '797 Patent has transformed that putative concept into patent-eligible subject matter.

///

///

///

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 21) is DENIED.

IT IS FURTHER ORDERED that the Motion for Leave to File Notice of Supplemental Authority (ECF No. 32) is GRANTED.

IT IS SO ORDERED.

DATED: This 18th day of October, 2016.

_____
ROBERT C. JONES
United States District Judge